on behalf of Employer Solutions. The Court reversed the Administrative Law Judge's decision for a straightforward reason. Employer Solutions did nothing wrong. The record is undisputed that every person Employer Solutions hired presented appropriate documentation to verify their eligibility for employment in the United States. The record is undisputed that Employer Solutions' on-site representatives reviewed that paperwork and verified the prospective hiree's employment verification. Would there be anything inappropriate, particularly after this ruling, if we sustain it for that on-site representative to do the certification itself? Certainly the on-site representative could sign the form. The form authorizes any authorized representative of the employer to sign the form. And therein lies ultimately the fundamental error of the Administrative Law Judge. There is no requirement in the statute that the same person who reviews the original documentation and verifies employment be the authorized representative for the employer. In fact, the government admits that in its briefing. It admits that there is nothing in the Act that imposes that requirement. There is likewise nothing in the regulations that imposes that requirement. The only obligation is that the employer provide the certification. And the new requirement that the agency conjured up here is one that has never been expressed in a regulation, had never been expressed in any interpretive guideline or other type of official agency document. It was something that was imposed and articulated retroactively for the first time in this case. And the sad irony, Your Honors, is that Employer Solutions was trying to be extra diligent in doing more than what the Act requires. Judge Southwick, as your question acknowledges, the on-site representative could have signed the certification. Why wouldn't they do it that way? Then you have the man who's attesting to the genuineness of the document and the fact that it is that person appearing before him, that same person is making the attestation. Why wouldn't you do it that way? It certainly could be done that way, Your Honor. But here the second level review added additional certainty that you had another set of eyes at least, you know, looking at at least, you know, color copies of the documents and providing a second verification. The second set of eyes didn't have the original document to look at and they didn't have the person to look at to compare to the photograph. No, sir, but that second level review is not required either. But wasn't the purpose of this to make sure there weren't people being hired improperly and so the whole purpose and idea was to look at the person directly and look at the original process that was being used sort of defeats that goal and that purpose of the statute? Absolutely not, Your Honor, because that on-site eyeball review with original documents was in fact done. The record again is undisputed by the government that the on-site representatives who are authorized under the Act and statute and regulations to be the person who does the eyeballing looked at the original documentation, looked at the documents to make sure they And in fact, the record's undisputed that everyone who was hired was in fact eligible to work here. But the person that did it firsthand did not have to attest to it. So doesn't that open the door for more error because the person that attested did not verify the originals and see the person. So it opens it up for some error there because the person that actually did it didn't attest to it. No, sir, Your Honor. And in fact, neither the statutes nor the implementing regulations So the person did attest to it, the first person that saw the individual and the original document? Oh, no. I was refounding. It doesn't open up error. No, it did. The person that saw him firsthand and saw the original documents did not attest to anything. That is correct. Now, under the process, the procedures that were in place at the So the second person then has taken the word of the first person. Yes, combined with their own review of the copies. Of the original, of not the originals. That is correct, Your Honor. But would you have Let me ask that one thing you said, and you were responding to Judge Prado, and then quite completed. What is, what documentation does your on-site agent give to the individual who does the actual certification? Is there essentially a certification? Is there something What does the record show us? Goes from El Paso or wherever this was done up to the home headquarters? Right. You have the policies and procedures of Employer Solutions combined with the training of the on-site representatives to tell them the requirements of the statute, what the forms, what forms must be presented, and what they must do under the Act. The on-site representative provides that, does the review, what the Act requires, then makes the copies, sends the documentation back. I have the equivalent of an I-9. The person doesn't certify employee by employee or applicant by applicant what the I-9 certifies to? The on-site representative does not fill out, fills out the I-9, but doesn't sign the I-9. And so Doesn't sign anything else that's in-house either. A document that you, ESSG, has provided. I hereby certify that I've done everything that I'm supposed to do. No form that the Attorney General or the agency has provided, but obviously there's transmittal letters and there are e-mails and things like that. But here's the point, Your Honor. The Act requires two things. From the employer, it says the employer as the entity must conduct these reviews. And the regulations specify that the employer can be not only any employee, but any agent or other person acting in its interest. So there's no question that the process and the on-site review complies with the statute and regulations and the government never disputes that. Secondly, the employer must provide an attestation. There is no requirement in the statute or regulation that says, well, the person who does the eyeballing of the documents must also provide the employer's attestation. And in fact, the Form I-9 itself doesn't require that. Section 2 of Form I-9 says that the employer, quote, the employer, the entity, must sign the form. And then in the signature block, it reads, this is the signature of the employer or its authorized representative. So when an employer is an entity like a corporation or a limited partnership, necessarily a person must sign on its behalf, but there is no limitation that the authorized representative must sign this form. Well, but an individual has to say, I attest, doesn't he? The form says, I attest, but it's supposed to be the certification of the employer, and the form says the employer must sign. So in the context, the I being referred to there is the employer. But, Your Honor, all that just goes to whether or not there is a technical violation of the statute or not. There are two additional grounds for reversal here. Well, if the evidence turned out that the gentleman who signs I attest is falsifying the information, he'd be subject to a perjury charge, wouldn't he? If he had knowingly filed a false statement. And there is no suggestion here that that person was knowingly providing a false attestation. But isn't that a good reason to have someone look at the original documents and compare the man himself with the photograph before he makes that attestation so that if he's not telling the truth, he's subject to perjury? That may well be, and the individual who signs that may well want to do that. But the question here is, did the agency craft a regulation and give fair notice to the employer that the same individual who does the verification must be the same individual who's the authorized representative on its behalf to sign the form? And to this day, the government has never identified anywhere in the statute or the agency document before the assessment of the fine here that put the employers and the whole — because it's not just the employers, it's the entire regulated community out there — on notice of this supposed requirement. Well, Counselor, obviously the argument by the government is you put all the various materials together that you understand better than I do. That is the meaning of it all. It does seem to me the issue of fair notice is how fair must the notice be, how clear must the notice be if, in fact, we agree with the government that this is the proper interpretation, their interpretation is the proper one. Was it explicit enough? Was it clear enough? Was there guidance in some form that puts you on notice? Once you work with that sum, what was — if we do agree that when you read all this together, the proper interpretation, the only thing that really makes it work is that the attestator, if there is such a word, is the person who actually eyeballed the applicant, why is that interpretation not a fair enough notice to you? Right. I think that's a straightforward, simple answer, Your Honor. It comes from this Court's line of authorities under the Diamond Roofing cases on fair notice. In order to assess a fine under a civil regulation like this, the existence of the requirement must be reasonably ascertainable before the assessment of the penalty. So this is not a — it's not a situation where the government can come in retroactively and say, well, this is a reasonable interpretation, you must defer to it now. Maybe that might be true going forward. But if there is, in fact, a violation, well, based on a new interpretation never before announced, you have to be able to put your finger on some document in the administrative record or the legislative history or the agency's regulations and the promulgations of those regulations that say the regulated community was on — had reasonable basis for ascertaining this requirement. And the government had never and doesn't purport to say there is anything in the legislative history or the regulatory history that put the regulated community on notice of this supposed requirement. What about the handbook that goes with the I-9? The government has not pointed to that as saying that imposes this requirement with — Is that in the record, the handbook? One version of the record is partially — no, I don't think actually the handbook is not in the record, I am told, Your Honor. I'm sorry. The instructions for Form I-9 are in the record. And those instructions do not provide that code of guidance. And in fact, Your Honor, the 28J letter that the government submitted last week in as much as concedes this by asking you, the court, to defer to its now interpretation, it is as much conceding that the form is at best ambiguous. And that form, therefore, cannot have put the regulated community on reasonable notice of this obligation. One of the concerns I have, it could have been clear, you could say it wasn't clear at all. But the I-9 itself is a pretty strong indicator that the person making the attestation needed to commit — conduct the activity's investigation. And the I attest and what follows the attestation just doesn't make sense other than reading it very liberally to mean I and my people have done all of the following. But it doesn't say I and my staff and my agents. It says I have done the following. So that, to me, is some notice beyond what you're saying was so obscure about this. It's a question. You've raised a legitimate question, a — how many hundred thousand dollar question? I'm trying to remember. Two hundred and fifty thousand. Two hundred and fifty thousand dollar question here. But what about just the form itself? Isn't that — I mean, when I swear to things that I have done, I'm usually trying to be pretty sure that I have done them. Right. I urge you, Your Honor, as I know you have and will do again, is to look at the form. It's behind tab F in the record excerpts. Section 2 says the form is to be completed and signed by the employer, period, the corporate entity. The box is the certification of the employer. The signature is to be of the employer or authorized representative. Because if, obviously, the employer is an entity, it has to be an authorized representative signing. That is consistent with the statute and the regulations that says it's the employer who gives the attestation, not a particular individual, because that individual has no obligation to ensure that only authorized aliens are hired. That individual says, I attest to these things, and then signs his name. And the question is, Your Honor, is it reasonably certain, based in the absence of any statutory or regulatory language or administrative guidance, that that is supposed to be an attestation of the individual or of the entity? But even as an attestation of the individual, it is still technically correct here, and the record is undisputed about that. But don't the instructions to the form say that the employees must present original documents? And that was done. But this is instructions to the form. But each person who was hired did present original documents to the employer here, to the on-site representatives. Nothing in the instructions, Your Honor, says that the same person who reviews those original documents must be the authorized representative who gives the corporate attestation. In fact, the government changed those instructions after Employer Solutions here was in the process of being sanctioned to make that very point clear. Thus, in effect, conceding that the instructions prior to that did not give the regulated community clarity. So you don't think where it says employees must present original documents as instructions to form 1-9 apply to that form? That you must present original documents in order to sign that form? It does apply to that, Your Honor, but my point is they did present original documents to the employer in each instance. But not to the person who signed the I-9 form? That is correct. And the instructions don't specify that further requirement. Okay. Thank you, Your Honor. We have some time left for a vote. Mr. O'Malley? May it please the Court? My name is Andrew O'Malley and I represent the respondents in this case. There are two main points that I would like to address today. First, that it is clear from the I-9 form itself that the individual attesting to having reviewed the documents has to be the same person who actually reviewed the original documents and determined that they legitimately related to the individual who presented them. And the second point is why that matters. Now, why it's clear, that's really the crux of the ALJ's decision, is that this form, that is the, I guess, where the rubber meets the road in terms of ICE's enforcement of the comprehensive statutory scheme, is clear. It is clear that the individual who signs the form has to have reviewed the documents presented by the employee, the original documents. The form says, I, and it requires that the individual provide their job title. It doesn't allow for a rubber stamp by the employer or just anybody to sign that. It has to be the same person that reviewed those documents. Why is their interpretation that it's not a representative of the corporation that is signing it, not an individual? Well, if it was just a representative of the corporation, it wouldn't say I reviewed these documents and I determined that these documents relate to this individual under the penalty of perjury. They would just allow any corporate signature on there at all or a rubber stamp by the employer saying that they performed that function. And that's not what it is. It's under pains and penalty of perjury that this individual reviewed these original documents, looked at this person, and determined that they legitimately relate to them or reasonably relate to them. You said original documents, but the form does not say original document. The form says, I believe the instructions say, that the employee must present original documents. The regulations state that the employee must present original documents. The handbook states that the employee must present original documents. The handbook also states that the employer must review original documents. And we know from the regulation, and the petitioner makes the point of this in their brief, that in the section of the regulation where it lays out the employer's obligation, it doesn't say the word original documents, it just says documents. But what it does, and the ALJ recognized this here, is say, documents presented by the employee pursuant to subsection 5, which is the employee's obligation, and that's where it discusses original documents. So it's clear from that, that the employer has to review the original documents of the employee. Was there any evidence that there was any illegal person being hired of all these over 200 people? There was no proof that any of them were improperly hired, that were illegal aliens, that didn't have a job permit or whatever was necessary. I mean, could it be argued, and they argued it's just a technical violation, we really have not been a company that's committing a crime by hiring a bunch of people that don't have a work permit? Well, there was no charge that these individuals were unauthorized. I don't know that the evidence really shows that it wasn't delved into. They did submit, excuse me, E-Verify results for the documents that were submitted to the individual who was acting on their behalf for Flexicorp, the hiring agent in Texas. As my understanding is from the record, that Flexicorp agent then sent those documents that were presented by that individual somewhere else to be E-Verified. And here, and this is one of the reasons that it's so important that the same individual attest that has reviewed those documents. ESSG has no idea if those documents that were sent somewhere else for E-Verify actually relate to the person who was hired. They simply don't. And that is what the purpose of the attestation is. It puts the employer on the hook, and it puts the agent on the hook by signing that form saying we reviewed these, and these documents relate to this individual. Counselor, it seems to me that it's not a complicated question, but there are moving parts here, and the original documents and being reviewed and eyeballing the applicant or whatever we call the person who is presenting the documents has been done. And ESSG certified that that had been done. And obviously, the task that we have here is how to match up the person doing the certification to the task that they have not been challenged on. They represented here and presented evidence, I suppose, in the administrative record that they actually did review all these, or their agents reviewed these original documents. And in their brief, and you responded to it perhaps, 274A2 and subparts of the regulations discusses copying of documentation of the original documents and preserving those. And so there's a fair amount, and those being sent forward, there's a fair amount here, recognition that there could be an employer, there could be a recruiter, there could be a referrer or other representatives, as indicated. And it's one thing to make all this clear today. It's something else for us to be able to say that they were sufficiently on notice to have this quarter million dollar question answered in the way you are saying it needs to be answered. And so I don't know how else the Chief Department of Homeland Security or others could have pursued this, but would not it have been at least, can you see the clarity that we have now to have existed at the time that this particular fact pattern arose? Well, I don't think there's anything unclear. I didn't think you would concede that. I'm just, wouldn't it be better is all I'm asking that we have taken any question out, I guess. Your new regulation could be challenged too, so don't hold me to it. But it is clearer now. And I hope you will say that it's clearer now, else why make the change? So can you concede that much? Yes, it is clearer now. It is clearer now. And the real question is, was there sufficient notice? First of all, they didn't raise the fair notice issue at all to the agency. They state that they did in their answer to the complaint. They did not. They raised some general perfunctory plea to substantial or substantive due process. It was not raised with any specificity. Do you think that is administratively necessary and that issue is waived? I do, Your Honor. It's something that the ALJ could have considered and could have remedied in this case or ruled on in this case if they had raised that fair notice issue. They did not. Second, again, we think it's clear from the form that a reasonable person would read that form and think, I reviewed the documents presented by the employee. Well, no, I didn't. And I looked at this employee and determined that these reasonably appeared to relate to that individual. Well, no, I didn't do that either. So clearly they're on notice that this is what's required in the form that is, again, where the rubber meets the road for how the agency manifests the employer verification requirements and its tool for ensuring compliance of that. You don't think there was a good faith effort on their part to try to comply with the spirit of the statute? Because they did have somebody sit there in person and talk to the person and see the original documents. That person in turn told the employer that things were good and somebody attested to it on a form. So it seems like they attempted to comply with the spirit of the requirement. Well, the issue of substantial compliance and the issue of the good faith defense that's located at B-6 in the Act are separate things. And I think the ALJ did a good job of saying this is not substantial compliance. You can't falsely attest here and say that you complied with the requirements of the Act. The issue of this being a technical and procedural violation for which the good faith is available versus a substantive violation for which it is not really goes to ICE's policy memorandum, the virtue memorandum, which laid out what constitutes technical and procedural versus substantive. And the ALJ's determination that based on that and the spirit of that and based on Ocahoke's case law, this constitutes a substantive violation because Section 2 is the very heart of the form. And performing that function is the very valid basis. I'm sorry, Your Honor. I mean, there's no reason that a FlexiCorps representative could not have attested. Is that right? Absolutely, Your Honor. They could have. In fact, the regulations seem to require that. They say a petitioner makes a big deal of employer and agency and things like that. And it's clear that the regulations set up a very loose system to allow employers to not have an undue burden here. And that's one of them. Their agent can absolutely review these documents and absolutely sign that form. From the employer, from, let's say, ESS's standpoint, is there any reason they would not want FlexiCorps to sign? Your Honor, I hesitate to answer this because we're operating under the assumption here that there was some sort of agent relationship because that's the factual determination that the ALJ made. But if you look at the record, if you look at the outsourcing agreement here between ESSG and FlexiCorps on page 1,010 of the record as the agency paginated or 1,017 by this court, there is a statement in their contract that says there is no principal agent relationship here and FlexiCorps is not allowed to perform legal functions on our behalf. I would assume that that is why it went through those extra steps to send everything up to Minnesota to sign that form. I don't know if that's the case. That's my assumption. And again, it's not pertinent particularly to the ALJ's decision here. There's no argument that ESS was trying to evade their responsibility somehow by handling it this way. But that's the concern and that's the issue is that this is an employer with 6,000 to 8,000 employees at the time spread across 25 different states and they're taking the word of somebody who says that they reviewed these documents when they have no idea. They're reviewing copies of documents. They have no idea if those copies have been tampered with or if a piece of tape was put over a Social Security card that said not authorized to work or not authorized for employment. Just tape that over, make a copy, and you're set. And they have not looked at the individual to determine if these documents that were reviewed actually relate to that individual. I mean, is there some concern that the employer, when they handle it this way, is avoiding having one of their employees? No, they're actually putting their name on the line. That's right. And that's exactly right. They're not evading anything. It's a matter of administrative ease for ICE, for one thing. They can take a look at this and say, yes, this was performed. Somebody actually looked at these documents and somebody actually verified and moved on. I'm sorry. No, go ahead. Finish. It's also important for the employer, and I certainly recognize this in Garcia, is that this form allows the employer to have that assurance that somebody has done this and that they're not employing somebody who's unauthorized. It gives them peace of mind as well that somebody has actually certified this. And that's one of the principal functions of the form. So it's ICE's compliance or ICE's review and auditing. It's putting the employer's mind at ease. And it's also the fact that this is a tool for enforcing the broader scope of 1324A. And by that, we're talking about the knowingly hiring and the individuals who are unauthorized. Now, if we take ESSG, for example, say one of their companies with whom they are in a contract with in Idaho, I don't know, is knowingly employing unlawful individuals and sending documents to ESSG saying we reviewed these, but those aren't right. Well, then if ICE goes after that employer in Idaho, I guess I said, for knowingly hiring, and they say, well, no, no, the employer is actually ESSG, and then ICE goes after ESSG and they say, well, we didn't know. We had no idea. This is the system we had set up to complete our I-9 forms. Maybe we're liable for some paperwork violations. But we're certainly not liable for the heightened civil penalties for knowingly hiring. But wouldn't you have given us all the reasons, all the policy reasons that your position as a matter of policy is correct? And obviously what we have here is whether as a matter of something, whether it's fair notice, whether it's good faith, whether it's something else, they can be held to that standard at this point as opposed to henceforth and forevermore. So I'm not saying your argument is not useful, but I'm not sure it is directly helpful to us figuring out whether, in fact, what they did was certifiably wrong at the time. Yes, Your Honor. I understand. Again, I'll- Are there other cases like this in the pipeline that the Office of Chief Administrative Hearing Officer or whoever else it is may have sanctioned other employers for doing something similar to this? I haven't seen a case where this has come up, which I think lends to the fact that I don't think anybody really misunderstands that requirement, that attestation. It just doesn't seem possible to read that and think that what they were doing was legitimately within what the regulations require. But the form itself says, I have examined the documents. It does not say the original documents. So if you look at the form by itself, it's not clear that it requires original documents. It says, I have examined the documents. The form says, I have examined the documents presented by the employee, and we know that that employee has to present original documents. And the instructions were clarified a month after this occurred? It was, yeah. I don't know if it was a month exactly, but it was. So why were they clarified if they were already clear? Well, the instructions, perhaps the instructions were unclear. That was not in the instructions. But I think on the form itself, it's quite clear. I don't know if they, I don't know why they- Well, I can understand why, but it's to avoid this problem, I would imagine, is why it was done. And without you conceding anything about this case, I have no doubt that's why it was done, to avoid this in the future. Absolutely. And I'd like to point out, too, that, well, beyond the fact that they didn't exhaust their unfair notice argument, beyond the fact that it's clear on the face of this form, that argument rings a bit hollow. Because it's clear from the regulations that where an employer, his or her agent, or anyone acting directly or indirectly, reviews those documents, they have to, one, review the documents and complete Section 2 and sign the attestation. It doesn't allow the regulations- I'm sorry, that was unclear. The regulations don't allow a split of functions like this at all. And I think the ALJ recognized this when she said, look, you can't, you can't have, why didn't you have your on-site representative sign that attestation when they reviewed those documents? So the split of functions doesn't seem to comport with the regulations, and they were at least on notice of something there was not right. Your Honor, if there's no more questions. Thank you. Thank you very much. Thank you for four minutes. Okay. Mr. Schabelsky, back to you, sir. Yes. Your Honor, I would like to address four matters that the government raised. Let me just ask you one thing. In one of the main problems and the reason you have the I-9 is so many illegal aliens can go get a fake driver's license or borrow a driver's license from a friend and use that as a document to support the I-9. And the only way you can detect that is if you eyeball the applicant, isn't it? Yes, Your Honor. And that was done here. And that goes to my very first point. The government just told you that the regulations don't allow or seem to contemplate split functions between eyeballing the original documents and signing the form. Absolutely incorrect. The regulation is 8 CFR Section 274A.2B1.2. That provides, that goes to who has to review the original documentation. It says the employer, his agent, or anyone acting in his interest must examine the original documentation. So the plexiglass agent could have signed the form and that would have been okay? No. No. He could review the original documentation. But the regulation about the attestation is more limited. That is Section 274A.2A3. It says and says only the employer must complete an attestation. So the very regulation the government now waiving saying you put people on fair notice, you couldn't split up this function, expressly says the eyeballing of the original documentation to make sure it's not an unauthorized alien can be done not by the employer but by anyone acting in his interest. But even if that's done, the regulation says it's the employer who must provide the attestation. The regulations clearly provide a split function. And what's happened here is that the agency crafted perhaps an artful form without proper instructions that they now regret and have changed to provide clarification. The I-9 says the employee must present the original documents. And then the employer must examine the presented documents. But the regulations say that the examination can be done by the employer or anyone acting on his behalf. I mean, doesn't that make it clear that the employer must examine the original documents that are presented to him? Not in the context since you have the governing regulations. And we have been sanctioned. I mean, just looking at that language on the I-9 itself. No, no, sir, Your Honor, because this is an attestation of the employer. And the employer is defined by the regulation to include agents. Absolutely. Well, I mean, if the regulation is unclear, wouldn't the form straighten you out on that? No, sir. I just added ambiguity. The point here, the government, if this is what they intended, has the obligation to make this restriction clear. And they didn't do it. What about the administrative forfeiture of this issue? Did you raise fair notice or only raised the good faith issue? We raised both, Your Honor. First, I would note the government has not argued waiver in the brief that this fair notice argument was waived. And in my experience with the appellate division in their briefing, they never look for an opportunity not to argue waiver. We have a double waiver. And here is where it was preserved, Your Honor. In the answer, which appears in the record excerpts at tab C, the second affirmative defense and third affirmative defenses include that the assessment here of the liability and penalties would violate due process. And that's what the diamond roofing case says. Lack of fair notice is a due process issue. Also, I would refer you to the tenth affirmative defense that provides that E.S. Employer Solutions had reasonable grounds for its conduct. In addition, Your Honor, the government served an interrogatory on Employer Solutions asking the bases for these affirmative defenses. That's interrogatory number 46. That appears in the administrative record. The answer to it does at pages 322 to 323. And the government included that as part of the exhibits to its summary judgment briefing before the ALJ. So this was before her. And in the answer there, you'll see that it goes on to say that ESG believed that what it was doing was reasonable and correct and compliant and had no reason to know otherwise. That's raising the fair notice argument, Your Honor. And then the third point, Your Honor, the government says this matters. Not splitting up the functions matters because the attestation puts the corporate employer on the hook. That has been done here. E. Employer Solutions had an authorized representative sign the bottom line and put the company on the hook. What we're complaining about is not that we're trying to evade the statute, but we shouldn't be unfairly assessed a quarter million dollar fine when we thought we were doing going beyond and beyond what the statute required. Thank you, Your Honors. Okay. Thank you, gentlemen. We have your case. And we'll take a break.